UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROLAND H. ANDERSON, JR.,
Personal Representative of the Estate of
BARBARA ANDERSON, Deceased,

                Plaintiff,                    No. 14-cv-13840

vs.                                      Hon. Gerald E. Rosen

SYLVIA MATHEWS BURWELL,
SECRETARY, UNITED STATES DEPARTMENT
OF HEALTH AND HUMAN SERVICES,

                Defendant.
_____/

OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on March 03, 2016

PRESENT: Honorable Gerald E. Rosen
United States District Judge

## I. INTRODUCTION

Plaintiff, Roland H. Anderson, Jr., the personal representative of the estate of

Barbara Anderson, seeks judicial review of the final decision of the Medicare Appeals

Council ("MAC") requiring him to reimburse Medicare $22,668.01 from a $140,000.00

medical malpractice settlement. This matter is now before the Court on the Secretary of

Health and Human Services' Motion for Summary Judgment. Plaintiff has responded

1

and the Secretary has replied.  Having reviewed and considered the parties' respective briefs and the Administrative Record of this matter, the Court has determined that oral argument is not necessary.  Therefore, pursuant to Local Rule 7.1(f)(2), this matter will be decided on the briefs.  This Opinion and Order sets forth the Court's ruling.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff's decedent, Barbara Anderson, died on September 20, 2006.  At the time of her death, Mrs. Anderson was under the care of Dr. Sudha R. Patel, M.D., who maintained a practice in internal medicine in Westland, Michigan, and Drs. Chandrakant Pujara, M.D. and Mansoor G. Naini, M.D., cardiologists employed by Michigan Cardiology Associates, P.C.

On March 26, 2009, Plaintiff Roland H. Anderson, Barbara Anderson's son and the personal representative of her estate, filed a medical malpractice/wrongful death lawsuit against Drs. Patel, Pujara and Naini, and Michigan Cardiology Associates in Wayne County Circuit Court.  In his state court complaint, Plaintiff alleged that despite the fact that Barbara Anderson's 2004 and 2006 stress tests had given indications of myocardial ischemia and/or coronary artery disease, and despite Mrs. Anderson's repeated complaints to the doctors from August 11 through September 19, 2006 of severe chest pain, pain between her shoulder blades, shortness of breath and severe fatigue, the defendant-doctors failed to entertain a diagnosis of unstable angina and/or acute coronary syndrome and failed to refer her to the hospital for immediate cardiac evaluation in an inpatient setting; instead Mrs. Anderson was treated for reflux esophagitis and gastritis.

[*See* Complaint, Admin. R. pp. 122-135].[1]  Plaintiff's theory was that the doctors' misdiagnoses of her symptoms and their failure to timely order an appropriate cardiology workup resulted in her coronary artery blockages going untreated, which ultimately resulted in her death.  *See id.*, Compl. ¶¶ 43-44, 58-59.  Plaintiff did not itemize his damages in the complaint, asserting only that, "at the time of trial," he "will claim any and all damages allowed and enumerated pursuant to the Michigan Wrongful Death Act, including damages both past and future of an economic and non-economic nature."  *Id.* ¶ 60.[2]

Plaintiff eventually agreed to a settlement of the action for a total settlement amount of $140,000.00, and, in February and March 2011, entered into two separate Release and Settlement Agreements -- one with Dr. Patel, and the other with Michigan Cardiology Associates and Drs. Pujara and Naini.  *See* R. 165-175.  Both agreements specifically covered medical services which were provided between August 11 and September 20, 2006.  *Id.*

The Patel Settlement releases and discharges all claims against Dr. Patel which arise out of the "occurence" and any "damages" incurred as a result.  R. 171.  "OCCURRENCE" is defined in the Patel settlement document as including

---

[1]  The Administrative Record is filed under seal at Dkt. # 14.  References to the Administrative Record hereinafter will simply be cited as "R" followed by the page number.

[2]   The Michigan Wrongful Death Act permits medical and hospital expenses as damages.  *See* M.C.L. § 600.2922(6).

Medical care, treatment and services rendered or which should have been
rendered or in any manner related to Barbara Anderson from the beginning
of time to the present by [Dr. Patel], including but not limited to events and
patient treatment beginning on o[r] about August 11, 2006 through Barbara
Anderson's death on or about September 20, 2006.

*Id.* at 170.

The Patel Settlement defines "DAMAGES" as including "[d]amages, costs,

expenses, losses, in any manner related to personal injuries of any kind whatsoever. . . ."

*Id.* The Patel Settlement further provides that Plaintiff

expressly acknowledges and agrees that it shall be the sole responsibility of
[Plaintiff] and [Plaintiff's] counsel to fully discharge and satisfy any and all
claims for payments and/or liens arising out of the subject matter of this
lawsuit from the proceeds of the Settlement, including but not limited to ...
any Federal Medicare claims for reimbursement of conditional payments
related to the OCCURRENCE. . . .

*Id.* at 173.

The Michigan Cardiology Settlement releases and discharges all "claims," which

are defined in the settlement document as including all claims for

demands, bills, ... costs, fees and expenses, ... economic and non-economic
damages, ... liens, ... and all other actions, causes of action, regardless of legal
theory, relating to or in any manner arising out of Deceased's relationship with the
Released Parties or pertaining to any medical care a[n]d treatment rendered or that
should have been rendered September 19, 2006 while Deceased was a patient of
the Released Parties.

*Id*. at 165-66.

Meanwhile, on  November 9, 2009, after Plaintiff filed the medical malpractice

action but before he signed the Release and Settlement Agreements, the Centers for

4

Medicare and Medicaid Services ("CMS"),[3] through a designated Medicare Secondary

Payer Recovery Contractor ("MSPRC"), sent Plaintiff a letter notifying him that

$41,340.46 paid by Medicare on his mother's behalf was subject to reimbursement

pursuant to the Medicare statute's Secondary Payer provisions.  In pertinent part, this

initial conditional payment letter stated:

> This letter follows a previous letter notifying you/your attorney of
> Medicare's priority right of recovery as defined under the Medicare
> Secondary Payer provisions.  Because you were involved in an automobile,
> slip and fall, medical malpractice, or some other type of liability claim, the
> medical expenses are subject to reimbursement to Medicare from proceeds
> received pursuant to a third party liability settlement, award, judgment, or
> recovery.
>
> ***
>
> Currently Medicare  has paid $41,340.46 in conditional payments related to
> your claim.  Attached you/your attorney will find a listing of claims that
> comprise this total.  Please take a look at this listing and let us know if
> you/your attorney disagree with the inclusion of any claim in whole or in
> part and explain the reasons why you/your attorney disagree(s).
>
> Please be advised that we are still investigating this case file to obtain any
> other outstanding Medicare conditional payments.  Therefore, the enclosed
> listing of current conditional payments (including a response of zero
> amount) is not a final listing and will need to be updated once we receive
> final settlement information from you.  It would be in your best interest to
> keep Medicare's payments and the statutory obligation to satisfy Medicare
> in mind when the final dollar amount is negotiated and accepted in
> resolution of the claim with the third party. . . .

---

[3]  The Secretary of Health and Human Services ("the Secretary") administers the
Medicare program, but has delegated most administrative responsibilities to the Centers
for Medicare and Medicaid Services ("CMS").  *See* Health Care Financing
Administration; Statement of Organization, Functions, and Delegations of Authority, 46
Fed. Reg. 56,911 (Nov. 19, 1981); see also 42 C.F.R. § 400.200.  CMS is authorized to
use contractors to administer the Medicare program.  See 42 U.S.C. §§ 1395h, 1395u; 42
C.F.R. § 421.5.

R. 98-99.

Plaintiff, through his attorney, disagreed with Medicare's claim that $41,340.46 was subject to reimbursement.  In a letter dated November 17, 2009 Plaintiff's counsel stated:

> Dear Sir/Madam:
> I am in receipt of your notification of November 9, 2009 claiming Medicare expenses in the amount of $41,340.46.  Allow me to state that such is not recoverable pursuant to Plaintiff's claim.  Plaintiff claimed delay in providing stress test, cardiac catheterization and bypass surgery that resulted in the death of Barbara Jean Anderson.  Your claim, therefore, is for medical services which would have been necessitated regardless of the alleged negligence.  All costs incurred by Medicaid [sic] would have been incurred in the absence of negligence, and perhaps even more, had Barbara Anderson not expired.  Please reconsider your position with respect to your lien in this case.

R. 230.

On January 31, 2011, the MSPRC issued a second conditional payment letter notifying Plaintiff that Medicare paid $1,713.77 in conditional payments related to his claim. [*See* R. 106-107].  Notably, the listing of Medicare claims and payments in the Summary Payment Form attached to this second conditional payment letter was incomplete:  it did not include any of the payments for medical services provided from August 11 through September 20, 2006; only claims from October 14, 2002 to August 11, 2006 were listed.  *See* R. 108-111.  However, like the first conditional payment letter, this letter again specifically cautioned that

> the enclosed listing of current conditional payments (including a response of a zero amount) is not a final listing and will need to be updated once we

>receive final settlement information from you.  It would be in your best
>interest to keep Medicare's payments and the statutory obligation to satisfy
>Medicare in mind when the final dollar amount is negotiated and accepted
>in resolution of the claim with the third party.

*Id.* at 107.

On March 11, 2011, before any order approving settlement of the case was entered

by the state court, Plaintiff faxed to the MSPRC a Settlement Statement along with copies

of the Patel and Michigan Cardiology Associates Release and Settlement Agreements.  In

this letter, Plaintiff's counsel also requested that Medicare provide his office with a

payment letter as soon as possible.  R. 210.

Plaintiff, however, did not wait for the final payment demand letter from

Medicare.  Instead, on April 21, 2011, Plaintiff filed a motion in the Wayne County

Circuit Court requesting approval of the settlements using only the $1,713.77 amount

noted in the January 31, 2011 conditional payment letter as the amount reserved in the

total settlement for the Medicare lien.  A motion hearing was held on May 13, 2011, and

an order approving distribution of the settlement funds was entered the same day.  *See* R.

92-95.  There is no indication that the court reviewed medical records or any other

documents to determine medical expenses or the amount of the Medicare lien; all that is

reflected in the May 13, 2011 order is that the court took "the testimony of the Personal

Representative, Roland H. Anderson, Jr.," and "reviewed the Proof of Service of notice

to all interested parties and certified Family Agreements filed hereinbefore, and the

Report of the Guardian Ad Litem, Peter L. Schwartz."  *Id.* at 93.

On July 1, 2011, after having received and reviewed the Patel and Michigan Cardiology Settlements and the Settlement Statement Plaintiff had submitted on March 11, 2011, the MSPRC issued a notice to Plaintiff requesting payment for the demand amount of $22,668.01.  R. 113-121. This final demand was for medical expenses for services rendered to Mrs. Anderson from September 11 to September 20, 2006, i.e., within the negligence period set forth in Plaintiff's malpractice complaint and the Settlement Agreements.

PLAINTIFF'S ADMINISTRATIVE APPEAL

Plaintiff disagreed with Medicare's Demand Amount of $22,668.01 and filed an appeal with the MSPRC on July 6, 2011.  *See* R. 199.  In his Letter of Appeal, Plaintiff, through counsel, reiterated what he had previously stated in protesting the first conditional payment letter:

> Allow me to state, again, that the amount of lien claimed ($22,688.01) is not recoverable pursuant to Plaintiff's claim.  Plaintiff claimed delay in providing stress test, cardiac catheterization, and bypass surgery which resulted in the death of Barbara Jean Anderson.  Your claim, therefore, is for medical services which would have been necessitated due to negligence, and perhaps even a larger amount, had Barbara Anderson not expired.  Please reconsider your position with respect to your lien in this case.

*Id.*

On August 14, 2011, the MSPRC affirmed its original decision.  *See* R. 190-197.

Plaintiff thereafter made a Request for Reconsideration to Medicare's Qualified Independent Contractor ("QIC").  *See* R. 186-188.  The QIC affirmed the MSPRC's decision finding that Plaintiff remained responsible for payment of the lien amount.  *See*

8

R. 177-180.  The QIC explained:

> In his reconsideration request, the appellant submits that the Medicare lien
> includes unrelated charges.  In support of this request, the appellant
> submitted an appeal letter, Payment Summary Form, a Complaint and
> Demand for Jury Trial. The basis of the appellant's argument is that the
> settlement relates to medical malpractice from a failure to timely diagnosis
> [sic] and that the beneficiary would have received the Medicare covered
> surgery regardless.  Medical records were not submitted for review.  The
> bypass surgery was directly related to the cause giving rise to the
> settlement.  The documentation submitted for review was insufficient to
> establish that the charges in the Medicare lien were wholly unrelated.
> Therefore, Medicare will affirm that the charges in Medicare's demand
> amount are related.

*Id.* at 179.

Plaintiff thereafter filed an appeal for an ALJ review on December 12, 2011.

*See* R. 68-175.  Plaintiff argued that Medicare's expenses were not related to Plaintiff's

claims of negligence regarding the timing of the medical services to Barbara Anderson

because the malpractice claimed was a failure to diagnose and provide services; (b) all

medical expenses would have been incurred by Medicare regardless of the timing of

those services; (c) Plaintiff acted in reliance "upon the position of CMS that related

expenses were in the amount of $1,713.77" in settling his case (d) after settlement and

distribution of funds to various Estate members pursuant to the terms of the Court Order,

there "exists no fund" to pay Medicare because all funds have been distributed except the

$1,713.77 that was "sequestered" for payment.  *See* R. 70-74.

The ALJ held a telephonic hearing on May 3, 2012 and took the matter under

advisement.  *See* R. 291-302.

9

On May 9, 2012, the ALJ issued his decision finding in favor of Medicare,

specifically finding that the amount set forth in the Demand Letter was subject to

recovery. *See* R. 34-41.  The ALJ first rejected Plaintiff's detrimental reliance

arguments:

> Appellant asserts that it acted "in reliance upon [MSPRC's]
> correspondence defining a lien at $1,713.77" in reaching a settlement of the
> matter.  Exhibit 12 and Exhibit 14.  However, the January 31, 2011
> correspondence from the MSPRC notified Appellant,

>> Please be advised that we are still investigating this caser file
>> to obtain any other outstanding Medicare conditional
>> payments.  Therefore, the enclosed listing of current
>> conditional payments (including a response of a zero amount)
>> is not a final listing and will need to be updated once we
>> receive final settlement information from you.

> Exhibit 7 at 2.  *See also* Exhibit 5 at 2.  It is clear that Appellant was
> informed that the amount of the Medicare lien was not final and was
> subject to change.  Moreover, there is insufficient basis for Appellant's
> assertion that CMS "abandoned" its intent to recover specific expenses.
> *See* Exhibit 14 at 6.  Accordingly, any reliance placed on the estimated lien
> as of January 31, 2011 was misplaced.

*Id*. at 39-40.

The ALJ also found no merit in Plaintiff's argument that Medicare would have

been responsible for the charges for Mrs. Anderson's care even in the absence of the

alleged negligence of the doctors:

> Appellant asserts that the amount specified for recovery by the
> MSPRC includes health care expenses that "would have been necessitated
> regardless of the alleged negligence."  Exhibit 6 at 1.  That is, Beneficiary
> would have incurred medical care expenses that would have been covered
> by Medicare in the absence of any negligence.  *See also id.* and Exhibit 10.

10

Therefore, the argument goes, Medicare cannot recover payments for charges for what it otherwise would have been responsible.

Appellant's argument that Medicare would have responsible for the charges for Beneficiary's care in the absence of the alleged negligence must fail. The fact that care *could have been* provided at an earlier date -- and, therefore, paid for by the payer *then* responsible for such coverage -- cannot serve as a basis for *future* financial liability for when, and if, such care is obtained. Such a premise is wholly untenable. Further, even if it is likely that Medicare would have provided coverage for standard medical care for Beneficiary's condition(s), such likelihood does not obligate Medicare to pay for care when another payer has financial liability for the medical expenses.

Appellant's reasoning also fails to account for what would be considered a "windfall" in the absence of the alleged negligence -- the settlement. Arguably, had Beneficiary received her medical care on a more timely basis, there would have been no lawsuit. Medicare Secondary Payer Manual ("MSPM") aptly states,

> Generally, the beneficiary is not disadvantaged where Medicare is the secondary payer because the combined payment by a primary payer and by Medicare as the secondary payer is the same as or greater than the combined payment when Medicare is the primary payer.

*Id.* at Ch. 1, § 10.

*Id.* at 40 (emphasis in original).

Plaintiff disagreed with the ALJ's decision. Accordingly, on July 13, 2012, he filed an appeal with the Medicare Appeals Council ("MAC"). *See* R. 32-33. At this final level of administrative review, Plaintiff continued to argue that the Medicare charges were unrelated to the negligence and that the Estate could not hold the tortfeasors liable for medical expenses because there was no evidence that the negligence of the tortfeasors

11

actually caused Anderson to incur the expenses. *See* R. 14-15. Additionally, Plaintiff argued that Medicare should not be permitted to recover because the State Court Order allocating the settlement funds was made after the judge conducted an "evidentiary hearing" and "as a matter of law the allocations to the heirs and interested parties were for losses other than for medical services." *Id.* at 13-15.

The MAC rejected Plaintiff's arguments and adopted the ALJ's decision. Like the ALJ, in its August 1, 2014 decision, the MAC wholly rejected Plaintiff's argument that Medicare should not be allowed to seek reimbursement for health care expenses that would have been necessitated regardless of the alleged negligence. In addition to voicing its agreement with the ALJ's decision on this issue, the MAC added:

> We would also add that the appellant's reasoning is faulty. The appellant pursued action against the physicians asserting in part that the very treatments and services (such as the bypass surgery) that apparently were included in calculating the Medicare lien should have been provided, and provided earlier, but were not, and that the failure to do so precipitated the beneficiary's demise. That was the cornerstone of the appellant's claim of negligence against the physicians. The settlement was the direct result of the alleged negligence. The Council has difficulty understanding how the appellant could then argue that the treatments have nothing to do with the claimed negligence and therefore Medicare has no right to recovery.
>
> Moreover, the appellant's argument that the medical services themselves would have been covered and paid for by Medicare has no merit. We are open to the proposition that at least some of the services could be subject to Medicare coverage, though we cannot by any degree of certainty conclude as much based on the record as it stands. But Medicare coverage, and Medicare payment obligation, would be dependent on meeting Medicare's requirements. The appellant simply assumes that Medicare would have covered the services. The appellant engages in speculation. And, as the ALJ indicated, Medicare is not obligated to pay for medical care when

another payer is determined responsible for the costs of that care.

R. 7-8.

The MAC also agreed with the ALJ with respect to Plaintiff's argument regarding reliance on a lien amount of $1,713.77. Citing to, and quoting the language in the second conditional payment letter, the MAC pointed out that "[b]y clear, unambiguous language, the MSPRC informed the appellant that the amount of the lien had not been finalized and cautioned the appellant to take this into consideration in negotiating a final settlement with the physicians." *See id*. at 8-9. The MAC also cited the MSPM which provides that because Medicare's claim for reimbursement does not come into existence until a third party is obligated to pay, no final demand for recovery can be made until a settlement is reached. *Id.* at 9.

Finally, the MAC rejected Plaintiff's argument that Medicare's recovery should be limited to the amount distributed in the state court order, explaining:

> The MSPM states:
>
>> In general, Medicare policy requires recovering payments from liability awards or settlements, whether the settlement arises from a personal injury action or a survivor action, without regard to how the settlement agreement stipulates disbursement should be made. That includes situations in which the settlements do not expressly include damages for medical expenses. Since liability payments are usually based on the injured or deceased person's medical expenses, liability payments are considered to have been made "with respect to" medical services related to the injury even when the settlement does not expressly include an amount for medical expenses. To the extent that Medicare has paid for

such services, the law obligates Medicare to seek recovery of its payments. The only situation in which Medicare recognizes allocations of liability payments to nonmedical losses is when payment is based on a court order on the merits of the case. If the court or other adjudicator of the merits specifically designate[s] amounts that are for payment of pain and suffering or other amounts not related to medical services, Medicare will accept the Court's designation. Medicare does not seek recovery from portions of court awards that are designated as payment for losses other than medical services.

MSPM, Ch. 7, § 50.4.4.

As the MSPM provides, the only situation in which Medicare recognizes allocations of liability payment to non-medical losses is when payment is based on a court order on the merits of the case. If the court or other adjudicator of the merits specifically designates amounts not related to medical services, Medicare will accept the court's designation. Medicare does not seek recovery from portions of court awards that are designated as payments for losses other than medical services.

The Council has carefully considered the state circuit court judge's order granting authority to settle the action. Exh. 1 at 20-23. However, we note that the only language in the order that specifically refers to medical expenses is the following:

> IT IS FURTHER ORDERED that payment shall be made to Medicare for a lien in the amount of One Thousand Seven Hundred Thirteen and 77/100 ($1,713.77) Dollars [.]

Exh. 1 at 22.

The judge's order states that $1,713.77 was the Medicare lien amount, *and not specifically that the judge determined that only $1,713.77 was the total amount allocated to medical charges and only medical charges.* It is apparent that this lien amount was specifically included in the judge's order based on the appellant's introduction into the record of the state court proceedings then-current information about the amount of the Medicare lien. As we discussed earlier, it is apparent that the MSPRC's last written

14

correspondence to the appellant concerning the then-current amount of the lien, $1,713.77, was dated January 31, 2011.  In that letter the appellant was told that this amount was not the final amount and would be subject to adjustment.  Exh. 7 at 1-2.  It also is evident that, between January 31, 2011 and early March 2011, the appellant negotiated a settlement.  *See* Exh. 8.  Then, later, after the parties had concluded their settlement negotiations, on May 13, 2011, the state circuit court judge signed the order that included the specific reference to the lien amount of $1,713.77.  It was not until after the judge had signed the order that the MSPRC next informed the appellant, by letter dated July 1, 2011, that the total amount that appellant owes is $22,668.01.  Exh. 9 at 1-5.  Thus, the record indicates that the settlement was reached even before the final lien amount had been determined and that is why the judge's order reflects an amount that was less than the final lien amount.  Under these facts, the Council is not persuaded by the appellant's argument that, in accordance with the MSPM Ch. 7, § 50.44, Medicare cannot recover more than $1,713.77  We are not able to conclude that the judge actually determined that the medical expenses and those expenses alone totaled $1,713.77.

R. 8-11 (emphasis in original).

Plaintiff now seeks judicial review of the MAC decision, reiterating the same arguments he made at each level of his adminstrative appeal.

## III.  DISCUSSION

A.  STANDARD OF REVIEW

A district court reviews a final decision of the Secretary of the Department of Health and Human Services pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1395ff(b)(1)(A).  The decision of the Medicare Appeals Council is considered the Secretary's final decision.  *See Heckler v. Ringer*, 466 U.S. 602, 607, 104 S.Ct. 2013, 2017 (1984).  The court's review is limited to determining whether, in light of the record as a whole, the Secretary's determination is supported by substantial evidence.  42 U.S.C.

§ 405(g).  Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971); *McClanahan v. Comm'r of Social Sec.*, 474 F.3d 830, 833 (6th Cir.2006) (quoting *Besaw v. Sec'y of Health and Human Servs.*, 966 F.2d 1028, 1030 (6th Cir.1992)) ("Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.")  If supported by substantial evidence, the findings of the Secretary are conclusive.  42 U.S.C. § 405(g).  In determining whether substantial evidence exists, the court "is limited to an examination of the record only" and does not "review the evidence *de novo*, make credibility determinations nor weigh the evidence." *Besaw,* 966 F.2d at 1030 (quoting *Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989)).

B.   SUBSTANTIAL EVIDENCE SUPPORTS THE AGENCY'S DECISION
     TO RECOVER MEDICARE CONDITIONAL PAYMENTS FROM
     PLAINTIFF_____

     Congress enacted the Medicare Secondary Payer statute ("MSP") to reduce escalating Medicare costs.  *See Weinstein v. Sebelius*, 2013 WL 1187052 at *3 (E.D. Pa. 2013 Feb. 13, 2013) (citing *United States v. Travelers Ins. Co.*, 815 F. Supp. 521, 522 (D. Conn. 1992).  In relevant part, the MSP provides as follows:

          (2) Medicare secondary payer
                                        ***
          (B) Conditional payment
                                        ***

16

(ii) Repayment required

[A] primary plan, and an entity that receives payment from a primary plan, shall reimburse the appropriate Trust Fund for any payment made by the Secretary under this subchapter with respect to an item or service if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service. A primary plan's responsibility for such payment may be demonstrated by a judgment, a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means. . . .

42 U.S.C. § 1395y(b)(2)(B)(ii).

The MSP makes Medicare a "secondary" source of payment for health care services. *See* 42 U.S.C. § 1395y(b)(2); *Walters v. Leavitt*, 376 F. Supp. 2d 746, 750 (E.D. Mich. 2005). When a primary payer has not paid or cannot reasonably be expected to pay promptly for covered services, Medicare makes a conditional payment to ensure the beneficiary receives timely health care. *See* 42 U.S.C. §§ 1395y(b)(2)(A)(ii), 1395y(b)(2)(B)(i). Medicare's conditional payments are "conditioned on reimbursement [to Medicare] when notice or other information is received that payment for such item or service has been ... made." 42 U.S.C. § 1395y(b)(2)(B)(i).

Under the MSP, if the beneficiary receives payment from a primary payer, the beneficiary must reimburse Medicare "for any payment ... with respect to an item or service if it is demonstrated that such primary plan has or had responsibility to make payment with respect to such item or service." 42 U.S.C. § 1395y(b)(2)(B)(ii). Responsibility "may be demonstrated by a judgment, a payment conditioned upon the

17

recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan, or the primary plan's insured, or by other means." 42 U.S.C. § 1395y(b)(2)(B)(ii).

These MSP provisions "in part, operate[] to prevent responsible tortfeasors or recovering tort plaintiff/beneficiaries from retaining the medical expenses paid by Medicare." *Mason v. Sebelius*, 2012 WL 1019131 (D.N.J. Mar. 23, 2012). A tortfeasor, for example, can be a "primary plan", *i.e.*, a primary payer, under the statute. *See*, *Hadden v. United States*, 661 F.3d 298, 302 (6th Cir.2011); *see also Taransky v. Sec'y of Health & Human Servs.*, 760 F.3d 307, 313-14 (3rd Cir. 2014); *Weinstein v. Sebelius*, 2013 WL 1187052 at *3. If a Medicare beneficiary seeks medical expenses as damages in a lawsuit, and the parties settle the claim, the settlement demonstrates the tortfeasor's responsibility for those medical expenses, regardless of whether the tortfeasor admits liability. *See* 42 U.S.C. § 1395y(b)(2)(B)(ii). The tortfeasor then becomes obligated to reimburse Medicare for the medical expenses. *Id*. If, however, the tortfeasor directly pays the settlement proceeds to the Medicare beneficiary, Medicare may seek reimbursement from the beneficiary. *Id*.

In *Hadden*, the Sixth Circuit held that, after the 2003 MSP amendments,[4]

---

[4] The 2003 amendments to the MSP added to § 1395y(b)(2)(B)(ii) the following language:

A primary plan's responsibility for such payment may be demonstrated by

18

"responsibility" is no longer an undefined term into which courts might funnel their own notions (or Hadden's) of equitable apportionment. It is instead a term of art, which defines several ways in which a primary plan's "responsibility" can be demonstrated for purposes of this section. We address only one of them here: specifically, under § 1395y(b)(2)B)(ii) as amended, if a beneficiary makes a "claim against [a] primary plan[,]" and later receives a "payment" from the plan in return for a "release" as to that claim, then the plan is deemed "responsib[le]" for payment of the "items or services included in" the claim. *Id.* Consequently, the scope of the plan's "responsibility" for the beneficiary's medical expenses -- and thus of his own obligations to reimburse Medicare -- is ultimately defined by the scope of his own claim against the third party. That is true even if the beneficiary later "compromise[s] as to the amount owed on the claim, and even if the third party never admits liability. And thus, a beneficiary cannot tell a third party that it is responsible for all of his medical expenses, on the one hand, and later tell Medicare that the same party was responsible for only 10% of them, on the other.

661 F.3d at 302.

Because the plaintiff in *Hadden* sought all of his medical expenses in his lawsuit, without reservation, he could not later tell Medicare that the defendant he sued (and settled with) was only responsible for 10% of the medical expenses. *Id.* at 302-03. *See also Taransky v. Sec'y of Dept. of Health and Human Servs.*, *supra*, 760 F.3d at 315 (relying on *Hadden* and holding "the fact of settlement alone, if it releases a tortfeasor from claims for medical expenses, is sufficient to demonstrate the beneficiary's obligation to reimburse Medicare.")

---

a judgment, a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan, or the primary plan's insured, or by other means.

42 U.S.C. § 1395y(b)(2)(B)(ii).

In *Weinstein v. Sebelius*, *supra*, a case substantially similar to this case, the plaintiff had brought a state court wrongful death action against a medical center and a number of health care providers seeking all damages "allowed," "recognized and recoverable" under the law, for the prolonged hospitalizations and death of her husband. Mr.Weinstein had suffered a stroke on April 10, 2005. He was examined at one hospital and then was transferred to the Albert Einstein Medical Center ("AEMC") to receive thrombolytic therapy ("TPA"). Mr. Weinstein, however, did not receive TPA because the resident who examined him at AEMC deemed TPA unnecessary. Shortly thereafter, Mr. Weinstein suffered a second stroke, on April 16, 2005. He was ultimately stabilized and discharged to a rehabilitation facility. He thereafter remained in various rehabilitation facilities and required multiple hospitalizations until his death five months later. *Weinstein*, 2013 WL 1187052 at * 1.

Like the Plaintiff's theory in this case, the theory of the plaintiff's lawsuit in *Weinstein* was that the failure of AEMC to provide her husband with TPA increased "the likelihood of Mr. Weinstein passing from stroke-related complications" and "caused and increased [his] risk of harm, ... pain and suffering and death." *Id.*

Weinstein ultimately settled with all of the AEMC defendants in September 2008. *Id.* In exchange for $425,000, Mrs. Weinstein agreed to release the defendants from "all ... claims ... arising from ... all medical professional health care services rendered" by the defendants, and to satisfy "any and all valid liens ... for reimbursement of any medical

20

expenses." *Id.* She also conditioned her release upon the court entering an order

"limiting Medicare's right of recovery to $2,922.34," which represented Medicare

payments paid for the time frame of April 10 through April 16, 2005, i.e., the period of

time between Mr. Weinstein's first and second strokes. *Id.*    The court approved the

settlement and Mrs. Weinstein's proposed distribution and set Medicare's reimbursement

at $2,922.34. *Id.* at * 2.

On March 17, 2009, a Medicare contractor issued a demand letter directing Mrs.

Weinstein to reimburse Medicare $58,393.57, representing all medical expenses paid by

Medicare from the date of the alleged malpractice until the date of Mr. Weinstein's death,

September 4, 2005.

Mrs. Weinstein filed an administrative appeal. After a hearing, the ALJ

determined that the state court's order limiting Medicare's right of recovery to $2,922.34

was not binding on Medicare because the state court lacked jurisdiction over federal

authorities, and because the record did not establish that the order was based on the

merits. *Id.* The ALJ further determined that Medicare satisfied its burden of proof

because it based its demand letter on Weinstein's wrongful death and survival claims,

and because wrongful death and survival claims "involve services up until the

beneficiary's unfortunate death," Medicare properly demanded payments through the

date of Mr. Weinstein's death. *Id.* The Medicare Appeals Council affirmed. *Id.*

The federal district court determined that the administrative decision "was not

arbitrary, capricious, an abuse of discretion, or otherwise legally wrong." *Id.* at * 5.

Relying on the Sixth Circuit's decision in *Hadden*, the *Weinstein* court explained:

> In [her] complaint, Ms. Weinstein sought damages for Mr. Weinstein's
> alleged "wrongful death," which she claimed was increased "by the
> negligence and carelessness" of [the health care providers] in treating Mr.
> Weinstein's initial stroke. She further demanded recovery of "all damages
> recognized by law," which in Pennsylvania includes the medical expenses
> associated with the wrongful death allegations. Thus Ms. Weinstein's
> complaint sought all damages, including medical expenses, from the date of
> the alleged malpractice, April 10, through the date of her husband's death,
> September 4. Moreover, because Ms. Weinstein agreed to settle all claims
> and demands as part of her release, Medicare is entitled to reimbursement
> for the full amount of the medical expenses paid for this time period.

*Id.* (citations to the record omitted).

The Sixth Circuit's reasoning in *Hadden* was also followed by the U.S. District

Court for the District of South Dakota in *Salveson v. Sebelius*, 2012 WL 1665424 (D.

S.D. May 11, 2012). In that case, a Medicare beneficiary brought medical malpractice

claims against two doctors, seeking damages, including medical expenses, for alleged

negligence related to two separate surgeries. The parties settled "all claims," and

Medicare sought reimbursement for the medical expenses it paid.

The beneficiary contested Medicare's right to reimbursement, asserting that it

could not show which expenses were based on the doctors' negligence. *Id.* at * 7. The

court disagreed, finding that the beneficiary's complaints against the doctors -- not the

evidence produced in the cases -- defined the scope of Medicare's right to reimbursement

and the beneficiary expressly released those claims in both lawsuits in the parties'

settlement. *Id.* Therefore, the court determined that the ALJ's determination that Salveson was not entitled to reduction or elimination of the Medicare lien was legally sound and supported by substantial evidence. *Id.* at * 8.

In this case, Plaintiff's malpractice complaint sought "any and all damages ... enumerated pursuant to the Michigan Wrongful Death Act, including damages both past and future of an economic and non-economic nature." R. 135. Such damages include medical and hospital expenses. *See* M.C.L. § 600.2022(6). Because Plaintiff's "obligation to reimburse Medicare is defined by the scope of his own claim against the [tortfeasors]," *Hadden*, 661 F.3d at 302, and because Plaintiff's complaint sought "all damages recognized by law" pursuant to a wrongful death statute which includes medical expenses, his complaint seeks medical expenses for purposes of Medicare reimbursement. *Weinstein,* 2013 WL 1187052 at * 5.

Plaintiff's settlements with Dr. Patel and the Michigan Cardiology defendants further make this clear. The Patel Settlement releases any claims related to the medical treatment provided to Mrs. Anderson during the same time period covered in the Medicare Final Demand, and expressly contemplates the payment of a Medicare lien from the settlement proceeds. *See* R. 212-215. The Michigan Cardiology Settlement releases any claims for bills, costs, fees and expenses pertaining to Mrs. Anderson's medical care on September 19, 2013, which is a date within the Medicare Final Demand period. R. 218-19. "Because [Plaintiff] claimed all damages available under the

23

[Michigan] wrongful death statute, the settlement, which settled all claims brought, necessarily resolved the claim for medical expenses." *Mathis v. Leavitt*, 554 F.3d 731, 733 (8th Cir. 2009) (construing Missouri wrongful death statute in deciding Medicare reimbursement appeal). *See also Taransky v. Sec'y of Health & Human Servs.,* 760 F.3d at 314 ("Medicare policy requires recovering payments from liability awards or settlements ... without regard to how the settlement agreement stipulates disbursements should be made. That includes situations in which the settlements do not expressly include damages for medical expenses." *Id.* (quoting MSP Manual, Ch. 7, § 50.4.4)).[5]

Plaintiff's argument that the medical expenses would have been needed regardless of the alleged negligence is equally unavailing. It is irrelevant whether the defendant-doctors could ultimately have been found liable for Mrs. Anderson's medical expenses if the case had been tried on the merits. As discussed above, the focus in a Medicare reimbursement case is whether the tortfeasors were *responsible* for payment, based on, for instance, "release ... of payment for items or services included in a claim against the primary plan...." *Hadden*, 661 F.2d at 302 (citing § 1395y(b)(2)(B)(ii)). "[W]hether or not there is a determination or admission of liability," the release of a claim for Mrs. Anderson's medical expenses was sufficient to deem the defendant-doctors (and now the

---

[5] Policy statements and interpretive rules, such as those included in the MSP Manual do not have the force of law and are not given *Chevron* deference. *See Christensen v. Harris Cnty.,* 529 U.S. 576, 587 (2000). They do, however, "reflect 'a body of expertise and informed judgment to which courts ... may proper resort for guidance.'" *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 399 (2008) (quoting *Bragdon v. Abbott*, 524 U.S. 624, 642 (1998)).

Estate) responsible for payment.  *See* 42 U.S.C. § 1395y(b)(2)(B)(ii).  *See also Weinstein,*

2013 WL 1187052 at * 4-5 (court refused to parse through medical expenses incurred for

two strokes where only one was listed in the complaint, because the release executed by

the plaintiff extended to the entire treatment period; therefore, plaintiff had to reimburse

Medicare for the full amount); *Salveson v. Sebelius*, 2012 WL 1665424 at * 5-6 (court

refused to determine whether all services for which Medicare sought reimbursement were

caused by physician's negligence because all claims were included in the release).

As the Medical Appeals Council determined, it is irrelevant whether Medicare

may have been responsible for those payments if they had been timely provided because

"Medicare is not obligated to pay for medical care when another payer is determined

responsible for the costs of that care."  R. 7-8.

Plaintiff's claim that the MAC erred in concluding that the state court's order

allocating only $1,713.77 to the Medicare lien was not binding with regard to the amount

reimbursable to Medicare is equally unavailing.  Plaintiff argues that the state court order

was issued "on the merits" (and hence, binding on the agency pursuant to MSPM §

50.4.4) because the court took testimony at the hearing.  While the record does indicate

that the court took the testimony of Plaintiff, there is nothing in the record that this

testimony concerned the particulars of the Medicare lien. There is nothing in the record

showing that the state court reviewed medical evidence.  Further, there is nothing in the

record of the state court proceedings indicating that the court was ever informed that the

$1,711.77 lien amount was conditional or that the dates of medical treatment covered by the medical services listed in connection with the lien did not include the dates of treatment included within the settlement.

As the court made clear in *Weinstein*, an order within the purview of MSPM § 50.4.4[6] is "on the merits" where it is "based on evidence, after development of the facts, rather than on technical or procedural grounds." *Weinstein*, 2013 WL 1187052 at * 7. In *Taransky*, the Third Circuit held that for purposes of MSPM § 50.4.4, an order is not "on the merits" where the order merely "rubber stamp[s] an uncontested motion for apportionment pursuant to a stipulated agreement by the parties." *Taransky*, 760 F.3d at 317-18.  This is precisely what is reflected in the state court's order in this case.  The state court order merely rubber stamped the medical expenses reflected in the $1,711.77 lien amount included in the Settlement Statement submitted by Plaintiff, pursuant to the stipulation of the parties.

*Bradley v. Sebelius*, 621 F.3d 1330 (11th Cir. 2010), and *Benson v. Sebelius*, 771 F. Supp. 2d 69 (D.D.C. 2011), the cases relied upon by Plaintiff, are inapposite.  In *Bradley*, the state court specifically took the testimony of the decedent's heirs and found that a substantial portion of the settlement amount was for the children's loss of parental companionship, a non-medical loss.  Hence, the Eleventh Circuit held that the state

---

[6] As indicated, MSPM § 50.4.4 provides that Medicare will accept a court's allocation of liability payments where a court has issued an order "on the merits of the case" that "specifically designate[s] nonmedical losses."  MSPM Ch. 7 at 50.4.4 (2008).

26

probate court order limiting Medicare's recovery of the wrongful death settlement proceeds was binding on Medicare.  621 F.3d at 1332-34.  Similarly, in *Benson*, the court held that Medicare reimbursement was limited where the state court order approving the settlement allocated specific amounts to medical and non-medical expenses.  771 F. Supp. 2d at 75.

In sum, based upon the foregoing, the Court determines that the Medicare Appeals Council's decision, upholding and adopting the ALJ's decision requiring Plaintiff to reimburse Medicare $22,668.01, the full amount sought in MSPRC's July 1, 2011 Final Demand for reimbursement for Medicare payments for medical expenses incurred from September 11 through September 20, 2006, is supported by substantial evidence.

<u>CONCLUSION</u>

For all of the reasons set forth above in this Opinion and Order,

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment

**[Dkt. # 15]** is GRANTED.  Accordingly, Plaintiff's Complaint is DISMISSED in its

entirety, with prejudice.


s/Gerald E. Rosen_____
United States District Judge

Dated:  March 3, 2016

I hereby certify that a copy of the foregoing document was served upon the parties and/or
counsel of record on March 3, 2016, by electronic and/or ordinary mail.

s/Julie Owens_____
Case Manager, (313) 234-5135

28